IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

**JUDY CURRY,**

    **Plaintiff,**

v.                                                                **CIVIL ACTION NO. 2:03CV115**
                                                                     (Judge Maxwell)

**WALTER W. WEIFORD, personally and
in his official capacity as Prosecuting
Attorney of Pocahontas County, West
Virginia; ROBERT A. ALKIRE,
personally and in his official capacity as
Sheriff of Pocahontas County, West
Virginia; DAVID A. WALTON,
personally and in his official capacity as
Deputy Sheriff of Pocahontas County,
West Virginia; and COUNTY
COMMISSION OF POCAHONTAS
COUNTY, WEST VIRGINIA,**

    **Defendants.**

## ORDER

### I. Introduction

On December 22, 2003, the plaintiff filed a *pro se* civil action against the above- named defendants pursuant to 42 U.S.C. §1983, 42 U.S.C. § 1985, 18 U.S.C. §241, and W.Va. Code §§61-2-9, 61-5-27, and 61-5-28 seeking monetary damages and a permanent injunction enjoining the defendants from continuing to violate her civil and constitutional rights.

On June 13, 2005, the defendants filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Because the plaintiff is proceeding *pro se*, the Court issued a notice pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) advising the plaintiff of her right to respond to the defendants' motion for summary judgment. On July 18, 2005,

the plaintiff filed a response. On July 26, 2005, the defendants filed a reply. On August 4, 2005, the plaintiff filed a Reply to Defendants' Reply to Plaintiff's Reply to Defendants' Motion for Summary Judgment. This matter has been fully brief and is now ripe for judicial review.

## II. Plaintiff's Contentions

The plaintiff asserts that on December 20, 2001, she went to the office of Defendant Weiford, the Pocahontas County Prosecutor, to complain that the Pocahontas County Sheriff's Department had failed to investigate the alleged theft of her beagle by Larken Dean, a cousin of Defendant Walton. The plaintiff alleges that Defendant Weiford told her he "'had no control' of the actions of the deputy, Brad Totten, whereby stating there was nothing he could do for the plaintiff relevant to the failure to act upon her civil complaint." (Complaint ¶10). The plaintiff further asserts that Defendant Weiford ordered her out of his office and shoved her "in the back repeatedly." (Complaint ¶12). According to the plaintiff, as a result of the alleged assault and battery committed by Defendant Weiford, she suffers from head, neck, and shoulder pain consistent with whiplash. (Id. at 13).

The plaintiff raises six counts in her complaint. Counts I, II, and III address alleged violations of state law for assault and battery; witness intimidation; and failure to perform the duties of prosecuting attorney.

In Count IV, the plaintiff alleges that she is bringing a claim pursuant to 42 U.S.C. §§1983, 1985 and 18 U.S.C. §241, because Defendants Weiford, Walton and Alkire "conspired to injure, oppress, threaten, intimidate, and interfere with the Plaintiff's free exercise and enjoyment of her rights and privileges under the Fourth, Fifth, and Fourteenth Amendments of the Constitution of the United States. Plaintiff alleges that the Defendants, as a matter of policy and practice and under

color of law, repeatedly denied the Plaintiff equal protection and due process of law, whereby holding the relatives of Defendant Deputy Sheriff David A. Walton as 'above the law.'" (Id. at ¶22).

In Count V, the plaintiff raises a claim of intentional infliction of emotional distress. In Count VI, the plaintiff asserts that the County Commission engaged in "gross negligent supervision" and ignored the pattern and practice of selective prosecution.

### III. Discovery

Pursuant to the Court's August 5, 2004 Scheduling Order, the parties had until May 27, 2005, to complete discovery. The Court notes that very limited discovery has occurred in this case. The plaintiff responded to the Defendants' First Set of Interrogatories and Request for Production of Documents. However, the plaintiff has not been deposed. Based on the information before the Court, it appears the following has occurred regarding the defendants attempts to schedule the plaintiff's deposition. By letter dated September 21, 2004, the defendants requested that the plaintiff provide them with dates she was available for deposition, and advised the plaintiff that her deposition would occur at the Pocahontas County Courthouse. No response was received. By another letter dated September 21, 2004, defense counsel made a second request for available dates to take the plaintiff's deposition, and advised her that her deposition would be held at the Pocahontas County Courthouse.[1]

On October 8, 2004, the plaintiff spoke with defense counsel, Drew S. Woods, regarding the location of her deposition. The plaintiff advised Mr. Woods that she did not want to have her deposition taken at the Pocahontas County Courthouse because such was the site of the incidents

---

[1] Defense counsel stated that the second request was erroneously dated September 21, 2004, as the letter was mailed on September 29, 2004.

alleged in her complaint. Thus, defense counsel offered to conduct the deposition at either their offices in Beckley or Charleston, West Virginia. However, the plaintiff requested that her deposition be conducted in a "motel room so that she could either lie-down or relax during the proceeding." The plaintiff was advised that she would be contacted at a later date.

The plaintiff sent defense counsel a letter dated October 7, 2004, in which she made numerous allegations against various individuals including "a federal judge."[2] Along with her October 7, 2004 letter, the plaintiff sent defense counsel a letter dated May 17, 2004 which she received from Dr. Debra C. Sams, D.O. Dr. Sams stated that the plaintiff had been her patient for over five years, and suffers from "recurrent severe depression" and "recurrent severe low back problems." Dr. Sams further stated "[d]ue to the severity of her depression and back problems, the simplest work tasks take a longer period of time. As a result of this, I feel Mrs. Curry to be totally disabled." The plaintiff also sent defense counsel a copy of a letter dated May 27, 2004 which she wrote to Dr. Sams. In her letter, the plaintiff described her various symptoms.[3]

Subsequently, by letter dated October 13, 2004, defense counsel advised the plaintiff that her deposition would be conducted either at the Pocahontas County Courthouse, or their offices in Beckley or Charleston, West Virginia. Defense counsel further advised the plaintiff that her failure to provide deposition dates within 7 days of the date of the correspondence would result in their

---

[2] For example, the plaintiff calls the defendants "criminals" and states that there is "a federal judge who tampers with [her] cases in favor of political and personal friends."

[3] The plaintiff indicated that she has "extremely excessive pain, alternating from down both legs to severe pain of the sciatic nerve with total involvement of the right leg (which can bear no pressure), the hydrocodone (Lorcet 10/650 tabs) is no longer effective in controlling pain. It is still effective however, on the pain which radiates down the right arm from the cervicals." The plaintiff requested that she be given oxycodone for the pain.

4

filing a motion to dismiss.[4] The defendants eventually requested the Court order the plaintiff to subject to the taking of her deposition at either the Pocahontas County Courthouse or the law office of Pullin, Fowler, & Flanagan, PLLC, in Beckley, West Virginia. By order entered on November 17, 2004, the Court ordered the plaintiff to attend her deposition at the Beckley Office of Pullin, Fowler, & Flanagan, PLLC and within 7 days of the entry of the Order provide defense counsel with dates of her availability for her deposition.

On December 2, 2004, the defendants filed a Motion for Default Judgment pursuant to Rule 37 of the Federal Rules of Civil Procedure as a result of the plaintiff's "callous disregard to participate in discovery and obey an Order of this Court." (Doc. # 27 at 1).

By Order entered on April 1, 2005, the Court denied the defendants' motion for default judgment and ordered the plaintiff to show cause within 15 days of entry of the order why she failed to comply with the Court's November 17, 2004 Order and to provide medical evidence which documented her inability to attend her deposition at the office of defense counsel in Beckley, West Virginia.[5]

On April 14, 2005, the plaintiff filed a Motion for Extension of Time to Respond to Order to Show Cause. In her motion, the plaintiff stated that she had to " wait until April 8, 2005, to get an appointment with her physician." She also asserted that Dr. Sams is "preparing documents which are to be typed by an 'outside' clerical service for the Plaintiff to present to the Court." The plaintiff stated that she would respond to the Court's Order to Show Cause on or before April 26,

---

[4]Defense counsel asserts that they decided not to take the plaintiff's deposition in a motel room because there is no medical evidence which reveals her deposition must be taken in a motel room and because of "the continuous threatening behavior displayed by the plaintiff."

[5]The Court also denied the plaintiff's motion for sanctions of unethical conduct.

2005.

On April 26, 2005, the plaintiff filed a document titled Plaintiff's Response to Court Order Entered April 20, 2005, in which she stated that Dr. Sams is working on documentation for the plaintiff to submit to the Court. The plaintiff also argued that the defendants have acted unethically by failing to request her medical records.

On April 28, 2005, the plaintiff filed a document titled Plaintiff's Response to Order to Show Cause in which, among other things, the plaintiff alleged that had the defendants requested her medical records, they would have received the "just cause" as to why she had not complied with the Order of the Court. The plaintiff also attached a copy of the April 25, 2005 report of Dr. Sams and requested that her deposition be conducted at a neutral location in Marlinton, West Virginia.

Prior to the plaintiff making her filings on April 26, 2005, and April 28, 2005, on March 17, 2005, the plaintiff filed a Motion to Extend Time to Amend Pleadings and on April 4, 2005, she filed a Motion to Amend Pleadings.

By Order entered on May 10, 2005, the Court Ordered the defendants to file a response, if any, to the plaintiff's Response to Court Order Entered April 20, 2005 and Response to Order to Show Cause and plaintiff's Motion Extend Time to Amend Pleadings and Motion to Amend Pleadings.

On May 24, 2005, the defendants filed a reply to Plaintiff's Response to Order to Show Cause in which they argued that the plaintiff has failed to show cause why the deposition cannot be conducted at counsel's office in Beckley, West Virginia or the Pocahontas County Courthouse. In support of their position, the defendants stated as follows: "Dr. Sams' correspondence simply provides that the Plaintiff may be uncomfortable if required to travel to Beckley, West Virginia and

that it would be in her best interest to be deposed in Pocahontas County. Dr. Sams' correspondence makes no reference to any requirement that the Plaintiff can only be deposed lying down or in a 'geri-chair.'" (Doc. #45 at 2). The defendants also stated that the plaintiff's assertion that her physical disabilities prevent her from traveling to Beckley, West Virginia, for her deposition must be "**seriously questioned as the Plaintiff appeared for the Rule 26(f) meeting at Defense counsel's office in Beckley, West Virginia on July 7, 2004.**" (Id. at 3). The defendants further argued that Dr. Sams "provides no evidence or explanation as to any medical or psychological condition that would prevent the Plaintiff from being deposed at the Pocahontas County Courthouse"; that the defendants would "incur unneeded costs in conducting her deposition at either a 'motel room' in Pocahontas County, West Virginia, or as Dr. Sams suggests in a conference room located in Pocahontas County Hospital"; and that "[i]t is simply not the Defendant's burden to incur further costs in acquiring Plaintiff's medical records to determine if the Plaintiff's refusal to be deposed in Beckley, West Virginia is legitimate, in particular, in light of the fact that Plaintiff previously appeared at the Beckley office for the Rule 26(f) meeting." (Id. at 4-5).

The defendants requested that the Court strike the plaintiff's pleadings and enter default judgment against the plaintiff. In the alternative, the defendants requested that the Court sanction the plaintiff and award the costs and fees associated with the taking of the plaintiff's deposition to the plaintiff.

### IV. Analysis

#### A. Motion to Amend

On April 4, 2005, the plaintiff filed a Motion to Amend her complaint to add a claim under 18 U.S.C. §1961 for RICO violations against the current defendants and 8 potential defendants.

On May 25, 2005, the defendants filed a Response to Plaintiff's Motion to Amend Pleadings wherein the defendants asserted that the plaintiff attempts to use an alleged drug trafficking ring to raise a RICO cause of action against 8 individuals and that the plaintiff's new allegations of a RICO violation "could not possibly have resulted out of the same transaction, occurrence or series of transactions or occurrences resulting from the alleged incident on December 20, 2001." (Doc. #46 at 4). The defendants further asserted that "it is preposterous to believe that the eight (8) individuals are somehow conspiring against Plaintiff to benefit any interstate or foreign commerce as they have no common connection by law or fact" and that the plaintiff's allegation of an enterprise is based on acts of vandalism and stalking directed towards her. (Id. at 5). Thus, the defendants concluded it would be complete waste of judicial economy to allow the plaintiff to amend her complaint.

Federal Rule of Civil Procedure 15(a) provides that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance to the amendment, futility of amendment, etc. -- the leave sought should, as the rule requires, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). See also Sandcrest Outpatient Services, P.A. v. Cumberland County Hosp. System, Inc., 853 F.2d 1139, 1148 (4th Cir. 1988). However, the court has the discretion to either grant or deny the motion to amend. Foman, 371 U.S. at 182.

The defendants answered the complaint on April 13, 2004. The petitioner wants to add

totally new claims against totally new defendants as well as the existing defendants. The RICO claims are unrelated to the allegations in the plaintiff's complaint. Thus, the plaintiff's motion to amend is DENIED.

### B. Motion for Summary Judgment

On June 13, 2005, the defendants filed a Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in which they argued that the plaintiff has failed to provide any evidence prior to the close of discovery on May 27, 2005; that Defendants Weiford, Alkire and Walton have qualified immunity; and the Pocahontas County Commission cannot be liable on the basis of *respondeat superior*.

The plaintiff responded by stating that the defendants' interrogatories were "idiotic"; by making allegations against the Court and defense counsel; by blaming the lack of discovery on the Court's failure to "rule on the issues pertaining to said conditions of being deposed"; and argued that the defendants do not have qualified immunity. The plaintiff requests "an immediate arrangement to be deposed, under her Doctor's reasonable conditions, on neutral territory so Defendants may not fabricate false reports regarding the Plaintiff and have her wrongfully arrested and taken away." (Doc. # 55 at 6). She further requests that she be granted IFP status so she can "initiate reasonable efforts of discovery." (Id.)

From the text of Rule 56(c) of the Federal Rules of Civil Procedure, it is clear that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

9

"When a motion for summary judgment is made . . . an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The Supreme Court has held as follows regarding summary judgment:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

"The burden on the moving party may be discharged by 'showing' -that is, pointing out to the district court-that there is an absence of evidence to support the non-moving parties' case." Id. at 325.

First, the Court notes that plaintiff did not timely file her response to the defendants' motion for summary judgment. By Order entered on June 14, 2005, the plaintiff was advised of her right to file a response to the defendants' motion for summary judgment within 14 days of the entry of the Order. On June 29, 2005, the plaintiff requested that she be given until July 15, 2005, to file a response because of her "indigency, lack of transportation, change in medication, and worsening of Plaintiff's radiculopathies in both arms caused by permanent disc and vertebral degeneration." By Order entered on July 5, 2005, the Court granted the plaintiff's request gave her until July 15, 2005 to file a response. However, the plaintiff did not file her response until July 18, 2005 claiming that her copier broke. Thus, technically, the defendants' motion for summary judgment is unopposed. However, pursuant to Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 416 (4th Cir.1993) where a

motion for summary judgment is unopposed, the district court must nonetheless ensure that the moving party is entitled to judgment as a matter of law. See also, Riccobene v. Scales, 19 F. Supp. 2d 577, n.1 (N.D. W.Va. 1998).

Thus, the Court has proceeded to determine whether there is a genuine issue of material fact. The Court notes that pursuant to the August 5, 2004 Order, discovery was to be completed on May 27, 2005. The plaintiff has not conducted any discovery whatsoever. "The fact that a litigant is proceeding *pro se* does not relieve [her] from [her]obligation to comply with the scheduling orders of the Court entered for the orderly conduct of litigation." Jackson v. DDD Company, 3 F. Supp. 2d 666 (D. Md. 1998). Further, the plaintiff failed to comply with the defendants' attempts to depose her, and the Court finds that the plaintiff has not shown cause for failure to comply with the defendants attempts to depose her.

The April 25, 2005 letter of Dr. Deborah C. Sams, does not indicate that the plaintiff could only be deposed lying down or in a "geri-chair," or that the plaintiff could not physically attend a deposition in Beckley. Instead, Dr. Sams states that the plaintiff "does have a history of chronic degenerative joint disease, she does have disc disease of the neck C6-C7. She also does have disc disease central mild herniation in the lower back as S1. She has chronic pain syndrome, insomnia issues. She is on multi-medications for the above as well as for severe and quite distinctive muscle spasms that she has in her low neck and back." With regard to the plaintiff's ability to travel to Beckley, Dr. Sams merely states the plaintiff would be "uncomfortable by the time she got there it would make it more difficult to answer questions because she would be dealing with acute fatigue syndrome as well as acute muscle discomfort." Dr. Sams further states that the plaintiff rarely drives herself and would have difficulty getting transportation to and from Beckley. Thus, the plaintiff has

not shown cause for failing to comply with the Court's November 17, 2004 Order.

Because the plaintiff has not developed any evidence whatsoever, there is no genuine issue material fact.[6] Specifically, in Count IV of her complaint, the plaintiff alleges that Defendants Weiford, Alkire and Walton conspired to violate her Fourth, Fifth, and Fourteenth Amendment rights and, as a matter of policy and practice, denied her equal protection and due process of law. It appears to the Court, when liberally construing the complaint as required by Haines v. Kerner, 404 U.S. 519, 520 (1972) and Gordon v. Leeke, 574 F. 2d 1147 (4th Cir. 1978), that the plaintiff is complaining that Defendant Weiford violated her constitutional rights by failing to investigate or prosecute Larken Dean. However, prosecuting attorneys are entitled to immunity when deciding whether to prosecute, even if the decision to prosecute is malicious. Imbler v. Pachtman, 424 U.S. 409, 427 (1976).

Further, prosecutors are absolutely immune for failing to independently investigate matters that are referred to them for prosecution. Van Cleave v. City of Marysville, Kansas, 185 F. Supp. 2d 1212 (D. Kan. 2002). Prosecuting attorneys are also entitled to absolute immunity for decisions not to prosecute. Roe v. City of San Francisco, 109 F.3d 578 (9th Cir. 1997); Harrington v. Almy, 977 F.2d 37 (1st Cir.1993); Wellman v. West Virginia, 637 F. Supp. 135 (S.D. W.Va. 1986). The decision whether or not to prosecute and what charges to bring rests entirely within the prosecutor's discretion. Wellman, 637 F. Supp. at 138. Consequently, Defendant Weiford has absolute immunity for his decision not to prosecute . The plaintiff has failed to submit any evidence that would defeat Defendant Weiford's immunity.

Moreover, to establish a civil conspiracy under 42 U.S.C. §1983, the plaintiff must prove that

---

[6]There is nothing in the record which indicates the plaintiff attempted to conduct any discovery on her behalf at all. The plaintiff blames her lack of evidence on the Court's denial of *in forma pauperis*.

the defendants acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the plaintiff's deprivation of a constitutional right. <u>Hinkle v. City of Clarksburg, WV</u>, 81 F.3d 416 (4th Cir. 1996). The plaintiff has not produced any evidence of a conspiracy.

Additionally, the plaintiff states that in addition to bringing her conspiracy claim under §1983, she is also bringing her claim under 42 U.S.C. §1985 and 18 U.S.C. §241. First, 18 U.S.C. §241 is a criminal statute, and provides no basis for civil liability. <u>See</u> <u>Moore v. Kamikawa</u>, 940 F.Supp. 260 (D.Hawai'i 1995), <u>aff'd</u> 82 F.3d 423 (9th Cir. 1996). Further, in order to state a claim under §1985(3), a plaintiff must allege and prove the following four elements: "(1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy." <u>Simmons v. Poe</u>, 47 F.3d 1370, 1376 (4th Cir.1995). "Moreover, the law is well settled that to prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." <u>Id.</u> at 1377. Conclusory allegations of a conspiracy are insufficient to state a claim. <u>Id.</u>

Additionally, the defendants have raised the defense of qualified immunity. With regard to qualified immunity, the United States Supreme Court has provided that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitgerald</u>, 457 U.S. 800, 818 (1982); <u>see also</u> <u>Pritchett v. Alford</u>, 973 F.2d 307, 312 (4th Cir. 1992).

The plaintiff has provided absolutely no evidence with regard to her claims in Count IV.

Thus, the defendants are entitled to summary judgment.

In Count VI, the plaintiff attempts to hold the County Commission liable on the basis of *respondent superior*. Municipal entities are absolutely immune from punitive damages, <u>City of Newport v. Fact Concerts</u>, 453 U.S. 247 (1981), and are not liable under the theory of *respondeat superior*. <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1978). However, a municipal entity may be liable for monetary, declaratory, and injunctive relief under §1983 if the execution of a municipal policy or custom was the "the moving force for the violation of constitutional rights." <u>Id.</u> at 694.

A policy can be made in a "policy statement, ordinance, regulations, or decision officially adopted and promulgated by the body's officers," <u>Monell</u> 436 U.S. at 690, by an act of a municipal official with final policymaking authority, <u>City of St. Louis v. Praprotnik</u>, 485 U.S. 112 (1988), or by widespread custom or practice. <u>Monell</u>, 436 U.S. at 691.

"[P]laintiffs seeking to impose liability on a municipality under §1983 must, therefore, adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that the policy proximately caused the deprivation of their rights." <u>Semple v. City of Moundsville</u>, 195 F.3d 708, 712 (4th Cir. 1999), <u>cert</u>. <u>denied</u>, 528 U.S. 1189 (2000)(quoting <u>Jordan by Jordan v. Jackson</u>, 15 F.3d 333, 338 (4th Cir. 1994)).

The plaintiff has provided no evidence whatsoever of an official policy or custom of the County Commission regarding the issue at hand. Consequently, the defendants are entitled to summary judgment as there is absolutely no genuine issue of material fact.

With regard to the plaintiff's state law claims, Counts I, II, III and V, the defendants are

entitled to summary judgment. The plaintiff is bringing these claims pursuant to the Court's supplemental jurisdiction which allows federal courts to hear and decide state-law claims along with federal-law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a); Wisconsin Dept. of Corrections v. Schacht, 524 U.S. 381, 387 (1998). Discretion rests with the district court to decline to exercise supplemental jurisdiction when:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

The Fourth Circuit Court of Appeals has provided additional guidance as to when a district court should exercise jurisdiction over state law claims, stating:

> A district court may exercise its discretion over state law claims made in the case through supplemental jurisdiction pursuant to 28 U.S.C. § 1367 when there is a federal basis for jurisdiction. See Shanaghan v. Cahill, 58 F.3d 106, 109 (4th Cir.1995). The district court exercises its discretion by considering factors that include: convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, or considerations of judicial economy."

Semple v. City of Moundsville, 195 F.3d 708, 714 (4th Cir. 1999), cert. denied, 528 U.S. 1189 (2000).

Because the Court has dismissed the plaintiff's federal claims, it declines to exercise

15

supplemental jurisdiction over the plaintiff's state law claims.

Consequently, in light of the foregoing, it is

**ORDERED** that the defendants' June 13, 2005 Motion for Summary Judgment is **GRANTED**. It is further

**ORDERED** that the plaintiff has failed to show cause for failing to comply with the Court's November 17, 2004 Order. It is further

**ORDERED** that the plaintiff's March 17, 2005 motion for extension of time to amend pleadings and her April 4, 2005 Motion to Amend pleadings are **DENIED**.

It is further **ORDERED** that the defendants' request for default judgment in Document #45 is **DENIED as MOOT** in light of the order granting the defendants' summary judgment.

It is further **ORDERED** that, in light of the Order granting defendants' summary judgment, this action is **DISMISSED** and retired from the docket of the Court.

IT IS SO ORDERED.

The Clerk of Court is DIRECTED to send copies of this Order to the pro se plaintiff and all counsel of record.

**ENTER**: September 21st, 2005

                **/s/ Robert E. Maxwell**
               UNITED STATES DISTRICT JUDGE